# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES PERRY, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 15-113 |
| v. | ) ) | |
| RICHARD MILLER; D.A. JOHN PECK; CITY OF MONESSEN; POLICE CHIEF OF MONESSEN; MAGISTRATE JOSEPH R. DEMARCHIS; KATHLEEN KANE; A.G. SHEEHAN BALCHON; and JOHN DOE POLICE OFFICER, | ) ) ) ) ) ) ) ) | Chief District Judge Conti<br><br>Magistrate Judge Lenihan<br><br><br><br>ECF Nos. 22, 35, 39, 59 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motions to Dismiss filed by Defendants Sheehan Balchon, Kathleen Kane, and Richard Miller (ECF No. 22), Defendant John Peck (ECF No. 35), Defendant Joseph DeMarchis (ECF No. 39), and Defendants City of Monessen, and Police Chief of Monessen (ECF No. 59) be granted.

### II. REPORT

  A.  Averments of the Amended Complaint

Plaintiff brings the above captioned civil rights action pursuant to 42 U.S.C. § 1983, alleging First Amendment retaliation, and violation of his Fourth Amendment protections against malicious prosecution, false arrest, and false imprisonment. (EC No. 9 at 1.)

Plaintiff avers that on February 24, 2011, John Doe police officer of the City of Monessen placed a weapon to the back of his head and threw him to the ground while yelling racial slurs. (ECF No. 9 at 3.) John Doe police officer then pulled Plaintiff to his feet and forced his head to the side of Plaintiff's truck. The officer then yanked Plaintiff's pants down to search Plaintiff in spite of Plaintiff's objection. John Doe police officer slammed Plaintiff's head against the truck again because Plaintiff objected to the search. (ECF No. 9 at 3.) The officer then brought Plaintiff to the police station where he conducted a strip search. (ECF No. 9 at 3.) The City of Monessen did nothing to stop the officer's actions. John Doe police officer held Plaintiff in police custody solely for the purpose of talking to agents Richard Miller and Andy Toth of the Pennsylvania Attorney General's office. (ECF No. 9 at 3-4.)

Defendant Agent Richard Miller ("Defendant Miller') wanted Plaintiff to cooperate in another ongoing investigation. Defendant Miller instructed agents to call Plaintiff several times, informing Plaintiff that he needed to cooperate, and that if he did not, Plaintiff would be arrested. Plaintiff immediately went to his attorney's office and asked his attorney to speak with the agents and request that they cease their direct communications with Plaintiff. (ECF No. 9 at 4.) Not long after the attorney's phone call and request, Plaintiff was arrested. (ECF No. 9 at 4.)

Plaintiff avers that after he was initially seized on February 24, 2011, he was retaliated against by Defendant Miller with the filing of false charges against Plaintiff on August 9, 2011. (ECF No. 9 at 4.) Plaintiff further avers that another element of retaliation by Defendant Miller was the confiscation of Plaintiff's property by Defendant Miller and that Plaintiff was forced to institute court proceedings for the return of his property. (ECF No. 9 at 4-5.) Plaintiff states that a judge ordered that his property be returned by Defendant Miller. Plaintiff's attorney called

Defendant Miller several times for the return of the property. Once Defendant Miller returned Plaintiff's property, several of Plaintiff's vehicles were damaged. (ECF No. 9 at 5.)

Plaintiff further avers that prior to his arrest, Defendant Miller and his agents followed him constantly, stopping Plaintiff several times, dragging him out of his car, and throwing Plaintiff to the ground and searching him. (ECF No. 9 at 5.) In addition, Plaintiff avers that Defendant Miller violated Plaintiff's Fourth Amendment when he tried to arrest Plaintiff on a "fake drug buy." (ECF No. 9 at 5.) In addition, Defendant Miller retaliated against Plaintiff when he and agent Andy Toth told Plaintiff's wife that she would be subject to arrest if she posted bond for Plaintiff. (ECF No. 9 at 5.) Plaintiff concludes that the above violated his First Amendment protection against retaliation, (ECF No. 9 at 13-14), and his Fourth Amendment protections against false arrest, false imprisonment, and malicious prosecution. (ECF No. 9 at 15-16.)

Plaintiff appears to aver additional claims relating to his August 9, 2011 arrest on drug charges.[1] Specifically, Plaintiff attempts to aver municipal liability claims against the Police Chief of Monessen for allowing John Doe police officer to engage in inappropriate behavior against Plaintiff when the Police Chief knew from the citizens of Monessen that John Doe exhibited a pattern of racist behavior, and yet approved John Doe's illegal arrests, and covered up his actions. (ECF No. 9 at 6.) Plaintiff further alleges that the Police Chief lacked proper investigative and police disciplinary procedures. (ECF No. 9 at 6.) (ECF No. 9 at 19-20.)

---

[1] In his Complaint at Civil Action No. 15-112, Plaintiff avers a factual scenario almost identical to the facts alleged here. In Civil Action No. 15-112, Plaintiff admits that when he was detained on February 24, 2011, agents found a "few bags" of heroin on his person. (Civil Action No. 15-112, ECF No. 3 at 10.) Civil Action No. 15-113 may be a manifestation of Plaintiff's intent to amend his Complaint at Civil Action No. 15-112. Whatever the reason for the duplicative filings, both civil actions are time barred with the exception of Plaintiff's malicious prosecution claim in Civil Action No. 15-113, for which Plaintiff is unable to state a claim.

3

Also relating to his August 9, 2011 arrest, Plaintiff avers that Defendant Magistrate Joseph R. DeMarchis ("Defendant DeMarchis") "failed to meet his duty by issuing a defective warrant." (ECF No. 9 at 7.) Specifically, Plaintiff avers that Defendant DeMarchis issued the warrant to Defendant Miller without corroboration of facts; disregarded the law of probable cause; and knew that Defendant Miller fabricated the charges but still issued the warrant. (ECF No. 9 at 7-8.) (ECF No. 9 at 21-22.)

Again relating to his August 9, 2011 arrest, Plaintiff avers that Attorney General Sheehan Balchon ("Defendant Balchon") issued an illegal wiretap without a warrant; issued a warrant to Defendant Miller without corroboration of the facts; disregarded the law of probable cause; and allowed Defendant Miller to seize Plaintiff all in violation of the Fourth Amendment. (ECF No. 9 at 8.) (ECF No. 9 at 17-18.)

As to Defendant Kathleen Kane ("Defendant Kane"), Plaintiff avers that in reference to the August 9, 2011 arrest, Defendant Kane failed to control Defendant Miller's actions when she allowed Defendant Miller to retaliate against Plaintiff; approved a pattern of inappropriate behavior when she refused to investigate Plaintiff's claims; engaged in a practice of tacitly approving illegal arrests and covering up Defendant Miller's actions; and authorized the use of racial profiling to effectuate arrests and traffic stops. (ECF No. 9 at 8-9.) (ECF No. 9 at 20-21.)

Next, Plaintiff attempts to aver municipal liability claims against the City and Mayor of Monessen[2] in regard to the Mayor's alleged actions and/or omissions concerning Plaintiff's August 9, 2011 arrest: 1) the Mayor failed to control John Doe police officer by allowing him to retaliate against Plaintiff by detaining him in February 2011, placing a gun to Plaintiff's head, dragging Plaintiff out his truck, throwing Plaintiff to the ground, and placing a foot to the back of

---

[2] The Mayor of Monessen is not a named Defendant in the above captioned case but is a named Defendant in Plaintiff's case at Civil Action No. 15-112.

4

his neck during a traffic stop; 2) the Mayor approved a pattern of inappropriate behavior by John Doe police officer when he failed to investigate Plaintiff's claims; 3) the Mayor knew from the citizens of Monessen that John Doe police officer exhibited a pattern of racist behavior; 4) the Mayor had a custom of tacitly approving illegal arrests by John Doe police officer and covering for the officer's actions; and 5) the Mayor lacked proper investigative and disciplinary procedures for police. (ECF No. 9 at 9-11.) (ECF No. 9 at 18-19.)

Finally, as to Defendant D.A. John Peck ("Defendant Peck"), Plaintiff avers that Defendant Peck failed "to implement adequate training measures for his assistant D.A.'s on the law . . . that forces inmates to sit in prison for up to 2 years or more just to force them into a plea." (ECF No. 9 at 11.) Plaintiff states that Defendant Miller and an unknown prosecutor made and swore to a criminal complaint where Defendant Peck falsely, maliciously, and with no probable cause, charged Plaintiff with the crime of possession with intent to deliver. (ECF No. 9 at 11.) Plaintiff further avers that under Defendant Peck's leadership, "[t]he D.A.'s office failed to create and administer policys [sic] and procedures regarding the proper use of signing off on warrants[,] and that failure to train and oversee the prosecutor's actions led to Plaintiff's arrest on false charges." (ECF No. 9 at 12.) (ECF No. 9 at 16-17.)

As to each defendant, Plaintiff seeks compensatory damages in excess of $50,000, and punitive damages in excess of $20,000,000. (ECF No. 9 at 22-23.)

B. Legal Standard

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward

5

> with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, the Court must liberally construe the factual allegations of the Complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can

6

reasonably read [the] pleadings to state a valid claim on which [Plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [Plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728 at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

   C.  Analysis

In support of their Motion to Dismiss ([ECF No. 22](#)), Defendants Balchon, Kane and Miller argue the following: 1) Plaintiff is unable to state a claim for malicious prosecution because this cause of action has not yet accrued; 2) Defendant Kane lacks the requisite personal involvement to state a claim pursuant to § 1983; 3) Plaintiff cannot state a claim for retaliation; and 4) Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).

In support of his Motion to Dismiss ([ECF No. 35](#)), Defendant Peck argues the following: 1) this Court lacks subject matter jurisdiction pursuant to the *Younger* abstention doctrine because there are pending criminal proceedings against Plaintiff in the Court of Common Pleas of Westmoreland County; 2) Peck is protected by prosecutorial immunity; and 3) Plaintiff has failed to aver enough facts against Peck to state a plausible claim for relief.

In support of his Motion to Dismiss ([ECF No. 39](#)) Defendant Magisterial District Judge DeMarchis argues the following: 1) Plaintiff's claims are barred by the statute of limitations; and 2) DeMarchis is protected by Eleventh Amendment and absolute judicial immunity.

In support of their Motion to Dismiss ([ECF No. 59](#)), Defendants City of Monessen, and Police Chief of Monessen ("Monessen Defendants") argue the following: 1) Plaintiff's claims are barred by the statute of limitations; 2) Plaintiff has failed to state a municipal liability claim

7

against the City of Monessen; and 3) Plaintiff has failed to state a supervisory liability claim against the Police Chief of Monessen.

Despite this Court's Orders at ECF Nos. 30, 38, 43, 50, and 61, Plaintiff has filed no responsive briefs.

Defendants raise many meritorious arguments. The Court need not undertake an analysis of these arguments, however, where it is clear from the face of the Amended Complaint that the civil action is time barred. Generally, a limitations defense may not be raised by motion, but must be raised in the answer. *See* Fed. R. Civ. P. 8(c) & 12(b); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). "While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver*, 38 F.3d at 1384 n.1. (citing *Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230 (7th Cir. 1990); 5A Wright and Miller, *Federal Practice and Procedure; Civil 2d*, § 1357). Here, the allegations of Plaintiff's Complaint are premised upon events that occurred in 2011.

Congress has not established a time limitation for a § 1983 cause of action. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in, Kasteleba v. Judge*, 325 F. App'x 153, 156 (3d Cir. 2009). The United States Supreme Court has indicated, however, that courts are to consider § 1983 actions as tort actions and borrow the statute of limitations for state tort causes of action. *Wilson*, 471 U.S. at 278. In Pennsylvania, the statute of limitations for tort actions is two years. 42 Pa. Con. Stat. Ann. § 5524. Therefore, for § 1983 actions brought in Pennsylvania federal courts, the appropriate limitations period is two years. *See Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985).

Federal law, however, governs when a § 1983 cause of action accrues; that is, when the statute of limitations begins to run. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, "'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998) (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (citations omitted).

Here, affording Plaintiff the most liberal construction of his pro se Amended Complaint, it is clear that Plaintiff's claims are time barred except for the claim of malicious prosecution.

First, the Court turns to Plaintiff's false imprisonment claim. A false imprisonment claim is defined as detention without legal process. *Wallace*, 549 U.S. at 389. Plaintiff alleges that on February 24, 2011, Plaintiff was detained by police solely for the purpose of coercing Plaintiff to cooperate in another ongoing drug investigation. ([ECF No. 9 at 3-4](#).) The United States Supreme Court has noted that the claim of false imprisonment is governed by a "distinct" accrual rule because a victim who is wrongfully detained may not be able to bring suit until after the imprisonment without legal process ends. *Wallace*, 549 U.S. at 389 (Every confinement is an imprisonment, whether it is in a prison, or by forcibly detaining a person in a public street, or in one's home.). Therefore, a claim for false imprisonment accrues when the alleged false imprisonment ends. *Id.* The *Wallace* Court noted that the tort of false imprisonment ends "once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (citations omitted) (emphasis in original).[3] Here, Plaintiff was preliminarily arraigned on July 21, 2011, and August 10, 2011. *See* Criminal

---

[3] The *Wallace* Court further noted that once legal process is instituted, the cause of action becomes one of malicious prosecution for the wrongful institution of the legal process. *Wallace*, 549 U.S. at 390.

Docket Sheets, Court of Common Pleas of Westmoreland County, *Commonwealth v. Perry*, CP-65-CR-0003372-2011(cross referencing Originating Docket No. MJ-10103-CR-0000289-2011), & CP-65-CR-0003361-2011 (cross referencing Originating Docket No. MJ-10103-CR-0000312-2011), https://ujsportal.pacourts.us/DocketSheets/CP.aspx.[4] Therefore, Plaintiff's cause of action for false imprisonment accrued at that time. Plaintiff's Complaint was not delivered to the Clerk of Court until January 2015, well after the expiration of the two-year statute of limitations.[5] The false imprisonment claim is clearly time barred.

Next, the Court examines Plaintiff's claim of false arrest claim. As noted by the United States Supreme Court, "[t]here can be no dispute that [a plaintiff can file] suit as soon as the allegedly wrongful arrest occur[s], subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date." *Wallace*, 549 U.S. at 388. Here, Plaintiff alleges that he was arrested, and of course, knew of his arrest, on August 9, 2011. Therefore, the false arrest claim is time barred because Plaintiff's Complaint was not received by the Clerk of Court until January 2015, well after the expiration of the two-year statute of limitations.

Plaintiff alleges retaliatory actions by the Defendants, all culminating in his arrest in August 2011. The Court has set out these alleged retaliatory actions in detail, *supra* at II.A. Taking all of Plaintiff's allegations as true and affording him every favorable inference, all of Defendants' alleged retaliatory acts resulted in injury to Plaintiff upon his arrest. Therefore,

---

[4] It is also important to note that not all dates alleged in the Amended Complaint are precisely reflected on the criminal docket sheets. Where conflicts exist, the Court has construed all discrepancies in the pro se Plaintiff's favor.

[5] The Court refers to the date that the original Complaint was delivered to the Clerk of Court rather than the date of filing because where a pro so plaintiff submits a complaint along with a request to proceed in forma pauperis, the complaint is deemed to be constructively filed as of the date it is received by the clerk. *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996).

Plaintiff would have been aware of the injuries he sustained as a result of the claimed retaliation on August 9, 2011, the alleged date of his arrest. These claims too, are obviously time barred.

Finally, the Court turns to Plaintiff's claim for malicious prosecution. The law is clear that in order state a claim for malicious prosecution, a plaintiff must aver, among other things, that the criminal proceedings at issue terminated in his favor. *Rose v. Bartle*, 871 F.2d 331, 348-49 (3d Cir. 1989). Therefore, for purposes of the statute of limitations, a § 1983 cause of action for malicious prosecution will not accrue until such favorable termination. *Id.* (plaintiff would not know or have reason to know of injury that forms basis of claim for malicious prosecution until underlying criminal proceedings are favorably terminated). Here, the underlying criminal charges against Plaintiff in the Court of Common Pleas of Westmoreland County were adjudicated on February 5, 2016, and Plaintiff was "found Guilty at Counts 1, 2, 3, 4, & 5."[6] *See* Criminal Docket Sheets, Court of Common Pleas of Westmoreland County, *Commonwealth v. Perry*, CP-65-CR-0003372-2011 at 15 & CP-65-CR-0003361-2011 at 15, https://ujsportal.pacourts.us/DocketSheets/CP.aspx. Therefore, this claim should be dismissed with prejudice. Plaintiff can have no claim for malicious prosecution where the underlying criminal proceedings at issue did not terminate in his favor. *See Kossler v.* Crisanti, 564 F.3d 181, 186-87 (3d Cir 2009); Rose, 871 F.2d at 348-49.

III. CONCLUSION

For the reasons discussed above, it is respectfully recommended that the Motions to Dismiss filed by Defendants Sheehan Balchon, Kathleen Kane, and Richard Miller (ECF No.

---

[6] Counts 1-4 were charges pursuant to 35 P.S. § 780-113 §§ (a) 30, which prohibits the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance. Count 5, charged pursuant to 18 Pa. Cons. Stat. Ann. § 903 (c) prohibits criminal conspiracies.

22), Defendant John Peck (ECF No. 35), Defendant Joseph DeMarchis (ECF No. 39), and Defendants City of Monessen, and Police Chief of Monessen (ECF No. 59) be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: February 12, 2016  BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

cc: James Perry
3495-2013
3000 S. Grande Blvd.
Greensburg, PA 15601

All Counsel of Record
Via Electronic Mail